OPINION
Defendant-appellant Vincent K. Chapel appeals the denial by the Guernsey County Court of Common Pleas of defendant-appellant's Motion to Suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On January 19, 1999, the Guernsey County Grand Jury indicted appellant on one count of Possession of Marijuana in violation of R.C. 2925.11(C)(3)(f), a felony of the second degree. At his arraignment on January 29, 1999, appellant entered a plea of not guilty to the charge contained in the indictment. Thereafter, a Motion to Suppress was filed by appellant on February 18, 1999. The same day, a written waiver of appellant's speedy trial rights was filed. Appellee, on April 27, 1999, filed a memorandum in opposition to appellant's Motion to Suppress. Appellant supplemented his motion on May 5, 1999. Five days later, an evidentiary hearing was held on appellant's Motion to Suppress. The following evidence was adduced at the hearing. On December 17, 1998, Trooper David Van Buren of the Ohio State Highway Patrol was on duty. Trooper Van Buren, who is a specially trained drug interdiction officer as well as a canine handler, was assigned to the canine unit on such date. For this reason, Trooper Van Buren was traveling in his patrol car with Fondo, a dog that had been trained to detect six different types of drugs, including marijuana. Fondo had been working with Trooper Van Buren for approximately two years. At approximately 2:15 P.M. on December 17, 1998, Trooper Van Buren observed a silver Bronco in the right hand lane ahead of him. At the hearing, Trooper Van Buren testified that the Bronco, which had Texas license plates, was "weaving very badly" and that the Bronco crossed the right edge line at least three times. Transcript of May 10, 1999, hearing at 19. Trooper Van Buren also testified that the Bronco almost struck the rear end of another vehicle. Based on the foregoing, Trooper Van Buren stopped the silver Bronco at 2:22 P.M. After advising Carson J. Irvin, the driver of the Bronco, that he had been pulled over for marked lane violations and for following another car too closely, Trooper Van Buren asked Irvin for his driver's license. While Irvin produced a Texas identification card, Irvin told Trooper Van Buren that his Illinois driver's license had been suspended. Irvin, according to Trooper Van Buren, appeared to be very nervous. Since Irvin was unable to produce a valid driver's license, he was not free to leave. Appellant, who was free to leave, was not advised so by Trooper Van Buren. When Trooper Van Buren stopped Irvin's vehicle, appellant was in the rear seat of the vehicle lying down. When asked for identification, appellant produced both a Texas driver's license and a Texas identification card. Both Irvine and appellant told Trooper Van Buren that they were coming from El Paso, Texas. However, while Irvin "stated that they were going to return right away, just going to drop off some Christmas presents [in Philadelphia] and come right back . . . Mr Chapel [appellant] stated that they were going to stay [in Philadelphia] through the holidays . . ." Transcript of May 10, 1999, hearing at 24. Trooper Van Buren noticed that both Irvin and appellant seemed nervous and that the two appeared to be living out of the Bronco since there were food wrappers on the Bronco's floor and blankets in the back seat. The trooper also noticed that the rear of the Bronco "appeared to be sitting lower than the aft [sic] of the vehicle like it had a lot of weight in the rear." Transcript of May 10, 1999, hearing at 22. After Trooper Stolarik arrived in response to Trooper Van Buren's call for assistance, Trooper Van Buren conducted an exterior canine sniff using Fondo. The exterior sniff occurred approximately seven minutes after Trooper Van Buren's stop of the Bronco. When Trooper Van Buren walked Fondo around the exterior of the Bronco, Fondo alerted and indicated three times. Trooper Van Buren then advised appellant, who was still in the Bronco, that the dog had alerted and that, therefore, appellant would have to have a seat in Trooper Stolarik's vehicle along with Irvine while the Bronco was searched. When Trooper Van Buren opened the Bronco's door, an alarm went off. Trooper Van Buren then told appellant that he needed the remote control to disarm the alarm as well as a key to unlatch the Bronco's rear hatch, which appeared to be locked. While appellant handed over the remote control, he initially refused to hand over the keys. Once Trooper Van Buren obtained both the keys and the remote from appellant, he shut off the car's alarm and opened the rear hatch. Upon opening the hatch, the trooper observed a black nylon suitcase or duffle bag that had "a large bundle which appeared to be a bundle of compressed marijuana" sticking out of it. Transcript of May 10, 1999, hearing at 28-29. After Trooper Van Buren took a pocket knife and cut the wrapping over the bundle, he "found it was a green plant material" that had all the characteristics of marijuana. Transcript of May 10, 1999, hearing at 29. In all, Trooper Van Buren discovered four suitcases containing eight compressed bundles of marijuana wrapped in contact paper. The bundles, which were seized by Trooper Van Buren, were tested at a crime lab and determined to be marijuana totaling 72,349 grams (i.e. — 165 to 170 pounds). On December 29, 1999, appellant entered a guilty plea in the Cambridge Municipal Court to Allowing an Unauthorized Driver to Operate a Vehicle. At the conclusion of the suppression hearing, the trial court took the matter under advisement. Thereafter, pursuant to an entry filed on May 24, 1999, the trial court denied appellant's Motion to Suppress in part, holding that "[b]ased upon the applicable law and facts of this case, . . . Trooper Van Buren (a) had probable cause to stop the vehicle in which the Defendants were traveling, based upon the cited traffic violations; and (b) had an articulable suspicion for probable cause to stop the Defendants on Interstate-70." On June 3, 1999, appellant entered a plea of no contest to one count of possession of marijuana in violation of R.C. 2925.11(C)(3)(a), a felony of the second degree. Thereafter, appellant was sentenced to a stipulated prison term of six years. In addition, appellant's drivers's license was suspended for a period of five years. A Judgment Entry of Sentence was filed the same day. Appellant now appeals the trial court's denial of his Motion to Suppress, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE VEHICLE SEARCH WAS CONDUCTED WITHOUT CONSENT AND WITHOUT PROBABLE CAUSE.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC OFFICER'S DETENTION OF APPELLANT FOR PURPOSES OF A VEHICLE DRUG SNIFF WAS NOT BASED UPON ANY ARTICULABLE FACTS GIVING RISE TO A SUSPICION OF SOME ILLEGAL ACTIVITY JUSTIFYING THE CONTINUED DETENTION.
ASSIGNMENT OF ERROR III
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE SEARCH AND SEIZURE OF FOUR SUITCASES CONTAINING WRAPPED PACKAGES IN A LOCKED VEHICLE WAS NOT A SEARCH INCIDENT TO APPELLANT'S ARREST AND WAS IN VIOLATION OF ARTICLE I, SECTION 14, OF THE OHIO CONSTITUTION.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." For purposes of clarity, this court shall address appellant's assignments of error out of order.
 II
Appellant, in his second assignment of error, contends that Trooper Van Buren's detention of appellant for purposes of a vehicle drug sniff was not based upon any articulable facts giving rise to a suspicion of illegal activity justifying appellant's continued detention. According to appellant, Trooper Van Buren "was acting on a hunch, not specific articulable facts involving this Appellant." We disagree. Appellant does not dispute the validity of the purpose of the initial stop by Trooper Van Buren. Under Terry v. Ohio (1968), 392 U.S. 1, a police officer may lawfully initiate an investigatory stop of a person if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer's suspicion of criminal activity. In determining whether a stop is proper, the totality of the circumstances must be considered. State v. Freeman (1980), 64 Ohio St.2d 291. As is stated above, the vehicle in which appellant was traveling was stopped after Trooper Van Buren observed the vehicle weaving outside of its lanes of travel and onto the side of the roadway. Moreover, Trooper Van Buren testified that he saw the vehicle nearly strike another vehicle. Thus, the initial investigatory stop of the Bronco was lawful since it was based on specific and articulable facts that Irvine, the Bronco's driver, had violated R.C. 4511.33, a traffic law prohibiting a motorist from weaving outside of his lane of travel. Trooper Van Buren's observations actually provided more than a reasonable suspicion that a traffic law was being violated. He had probable cause. In Dayton v. Erickson (1996), 76 Ohio St.3d 3, the Ohio Supreme Court, in an opinion written by Justice Douglas, concluded that "where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." Dayton at 11-12. The next issue for determination is, therefore, whether Trooper Van Buren's continued detention of both appellant and Irvine constitutes an illegal seizure. The Ohio Supreme Court in State v. Robinette held that "[w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." State v. Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus. Although Trooper Van Buren's motivation for detaining appellant and Irvine was not related to the purpose of the initial stop, we find that Trooper Van Buren had articulable facts giving rise to a suspicion of some separate illegal activity which justified an extension of the detention. At the May 10, 1999, hearing, Trooper Van Buren testified that it appeared appellant and Irvine were living in the Bronco since there were food, blankets and assorted wrappers in the vehicle. Trooper Van Buren also testified that the Bronco's Texas license plates were of interest to him since Texas is a source state for drugs. Not only did Irvine and appellant give conflicting stories about the length of their stay at their destination, but both also appeared to be nervous. Trooper Van Buren further testified that the rear of the Bronco appeared to be sitting lower than the rest of the vehicle as if there was a lot of weight in the rear. Furthermore, Irvine, the Bronco's driver, did not have a valid driver's license. Based on the foregoing, we find that Trooper Van Buren's continued detention of appellant and Irvine was based on articulable facts giving rise to suspicion of some separate criminal activity. We find that when the factors set forth above are considered in toto, their probative weight is sufficient to warrant a reasonable suspicion that Irvine and appellant were engaged in criminal activity separate from any traffic violation. Therefore, even though Trooper Van Buren continued to detain appellant and Irvine for purposes other than traffic violations, such seizure continued to be legal because the trooper had a reasonable and articulable suspicion to continue the detention. It should also be noted at this point that the initial stop of appellant's vehicle occurred at 2:22 P.M. The back-up trooper arrived at 2:29 P.M. and the dog is then brought out to "sniff" the vehicle. Trooper Van Buren had called for back-up at 2:26 P.M. and had also requested verification on appellant's driver's license status and warrant information on appellant and Irvin. That information came through sometime later during the stop. At or near to 2:29 P.M., Trooper Van Buren separated Irvin from the appellant, and found out Irvin and appellant had different stories as to how long they were going to stay in Philadelphia. Whether or not appellant was being questioned while Trooper Van Buren was awaiting information on licenses and warrants is irrelevant pursuant to Robinette, supra. The Robinette court found that an officer could briefly detain a person stopped for a traffic violation to ask him whether he was carrying any illegal guns or weapons pursuant to the drug interdiction policy, because such a policy promotes the public interest in quelling the drug trade." Robinette, at 241. Therefore, we conclude that Trooper Van Buren's questioning of appellant and Irvin separately about their destination and length of stay was a justifiable detention. The conflicting information given by appellant and Irvin then, along with the other factors, provided the articulable facts for reasonable suspicion for a Terry type detention to occur. It is during this Terry type detention that the drug dog sniff took place and was no more intrusive than a frisk of a person. Appellant's second assignment of error is, therefore, overruled.
 I, III
Appellant, in his first and third assignments of error, argues that the trial court erred in denying appellant's Motion to Suppress because the search of the Bronco was conducted without consent and without probable cause. Appellant further maintains that the search and seizure of the four suitcases in the Bronco containing wrapped packages was an unlawful search because the search was too broad and too exhaustive under the circumstances and had no constitutional justification. We must first address the issue of whether Trooper Van Buren had probable cause to search the Bronco. Probable cause is said to exist "when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense. State v. Otte (1996),74 Ohio St.3d 555, 559. Both Ohio and federal cases have held that an officer has probable cause to search a vehicle for contraband once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle. See State v. Carlson (1995),102 Ohio App.3d 585, State v. Palicki (1994), 97 Ohio App.3d 175 and United States v. Ludwig (C.A.10, 1993), 10 F.3d 1523 and State v. Kellar (Jan. 14, 2000), Montgomery App. No. 17896, unreported. The use of a dog to sniff the exterior of a vehicle, by itself, does not constitute a search. See Palicki, supra. Trooper Van Buren, at the suppression hearing, testified that Fondo, a trained drug detection dog, alerted three times to the odor of drugs during an exterior canine sniff of the Bronco. Specifically, Trooper Van Buren testified that "[a]t first he [Fondo] alerted to the rear hatch area of the vehicle [the Bronco] and then I continued to walk him around the car, he alerted to both passenger and driver's side also." Transcript of May 10, 1999, Hearing at 25. Based on the canine alert, we find that Trooper Van Buren had probable cause to conduct a search of appellant's vehicle. Appellant further challenges Trooper Van Buren's warrantless search and seizure of the four suitcases in the Bronco containing wrapped packages. The four suitcases were discovered when Trooper Van Buren opened the Bronco's rear hatch. While appellant maintains that Trooper Van Buren lacked probable cause to believe that evidence of a crime would be found in the Bronco, we do not agree. In the case sub judice, Fondo, the drug detection dog, alerted not only to the rear of the Bronco but also to each side as well. Moreover, at the suppression hearing, Trooper Van Buren testified that, when he opened the rear hatch, he observed a black nylon suitcase containing a "large brick" which stuck out of the suitcase. Transcript of Hearing at 28. The "brick" appeared to be a bundle of compressed marijuana. Finally, Trooper Van Buren testified that the Bronco had Texas license plates and that Texas was a source state for drugs. We find, based on the foregoing, that Trooper Van Buren had probable cause to believe that drugs would be found in the Bronco. In so holding, we agree with the reasoning set forth in State v. Bolding, in which the court held as follows:
 "The scope of the warrantless automobile search is determined by the scope of the officer's probable cause to believe that the vehicle contained narcotics. If the officer has probable cause to believe that a vehicle contains contraband or evidence of crime, he may search the entire vehicle . . . Therefore, we find that if an accredited drug dog alerts to the presence of drugs in a vehicle, the officer has probable cause to search the entire vehicle. Such a dog is trained to pick up the scent of narcotics and, hopefully, lead the handler directly to the source of the scent. However, many facts may prevent the dog from getting to that source. Therefore, the only practical rule is to permit a thorough search of the vehicle. The logic of our holding to especially manifested in this case where the dog alerted to the interior of the vehicle and the narcotics were found inside a knapsack and briefcase behind a tarp which separate the passenger compartment and trunk of the vehicle. The window was the only means by which the dog could pick up the narcotic scent. Furthermore, we find that once the trooper found the plastic bags in the console that he knew to be the type used to package narcotics for trafficking purposes, he had probable cause to continue the search of the entire car."
State v. Bolding (May 28, 1999), Erie App. No. E97-1115, unreported at 7.
Accordingly, for the foregoing reasons, appellant's first and third assignments of error are overruled.
The judgment of the Guernsey County Court of Common Pleas is affirmed.
 _________________ EDWARDS, J.
EDWARDS, J. HOFFMAN, P.J. and FARMER, J. concurs.